UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KEM WARREN and | ) | |
| K & J GRAB 'N BAG, | ) | |
| | ) | Civil No. 14-154-GFVT |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| UNITED STATES OF AMERICA and | ) | **ORDER** |
| KEVIN CONCANNON, Department of | ) | |
| Agriculture, Undersecretary for Food, | ) | |
| Nutrition, & Consumer Services, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Kem Warren, the sole proprietor of grocery store K & J Grab 'n Bag, applied for authorization to participate as a retailer in the Supplemental Nutrition Assistance Program administered through the Food and Nutrition Service, a Department of Agriculture agency. Because he carries a misdemeanor criminal conviction for possession of marijuana, FNS permanently denied his application pursuant to 7 C.F.R. § 278.1(b)(3)(i)(C). That provision mandates permanent denial if the owner of a firm is convicted of "[v]iolation of a Federal, State, and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses." *Id*. Warren sought judicial review in this Court, and the Government filed a motion to dismiss, or in the alternative, a motion for summary judgment, to which it attached the administrative record. Warren filed a cross motion for summary judgment. Because the Court concludes that the agency's interpretation of §

278.1(b)(3)(i)(C) is inconsistent with the plain language and regulatory history of the provision, the Court will VACATE the agency's decision and REMAND for further proceedings before FNS. The Court therefore need not reach the Government's arguments for dismissal of Warren's count for preliminary and permanent injunctive relief or his ostensible constitutional challenges.

## I

Warren purchased K & J Grab 'n Bag, a rural retail food market in Harlan County, Kentucky, in February 2014 and is its sole proprietor and manager. [Am. Compl., R. 9 at ¶¶ 2, 10]. Shortly afterward, Warren[1] applied for authorization to participate in FNS's SNAP program as an approved SNAP vendor. On February 27, FNS sent Warren a letter requesting additional information in conjunction with his application, including a copy of his criminal record. [*Id.* at ¶ 17; *see also* Ex. Administrative Record Vol. 1, R. 13-2 at 16-17]. That criminal record showed that Warren had been convicted on January 8, 2014, of possession of marijuana, a misdemeanor under Kentucky law, for which he had been fined $50.00. [Am. Compl., R. 9 at ¶¶ 20-21, 28; *see also* Ex. Administrative Record Vol. 1, R. 13-2 at 18-22].

On March 14, 2014, FNS Retailer Operations Division notified Warren that his SNAP application was permanently denied pursuant to 7 C.F.R. §§ 278.1(b)(3)(i)(C) and 278.1(k)(3)(i). [Ex. A, FNS ROD Permanent Denial Letter, R. 9-1; Ex. Administrative Record Vol. 1, R. 13-2 at 26-27]. Warren timely sought administrative review with the FNS Administrative Review Branch. [Am. Compl., R. 9 at ¶ 33]. On May 5, that branch issued a Final Agency Decision affirming the Retailer Operations Division's decision permanently denying Warren's authorization. [Ex. FNS Final Agency Decision, R. 9-2; Ex. Administrative

---

[1] Plaintiffs Warren and his sole proprietorship K & J Grab 'n Bag are referred to collectively herein as "Warren."

Record Vol. 3, R. 13-4 at 9-12].  The review branch determined that, given Warren's admitted

drug conviction, there was sufficient evidence to permanently deny Warren's authorization "as

set forth in [7 C.F.R. §§] 278.1(b)(3)(i)(C) and 278.1(k)(3)(i)."  [FNS Final Agency Decision, R.

9-2 at 4].  The branch emphasized that § 278.1(b)(3)(i)(C) is mandatory and affords the agency

no discretion "regarding the seriousness of [the] business integrity violation" at issue.  [*Id.*]

Pursuant to 7 U.S.C. § 2023(13), Warren then filed an action seeking judicial review in

Harlan Circuit Court.  [R. 1-1].  On June 26, 2014, the Government removed the action to this

Court.  [R. 1].  Warren later filed an amended complaint, [R. 9], in which he alleges that the

review branch's final decision was arbitrary and capricious, and claims that permanent denial

under 7 C.F.R. § 278.1(b)(3)(i)(C) based on a marijuana possession conviction was improper

under the regulations.  [R. 9].  He also seeks preliminary and permanent injunctive relief.  [*Id.*]

The Government filed a motion to dismiss Warren's complaint for failure to state a claim

or, in the alternative, a motion for summary judgment.  [R. 13].  Warren responded and, in a

footnote, requested that the Court treat the applicable portions of his response as a cross-motion

for summary judgment.  [R. 15 at 8 n.9].  Pursuant to this Court's order of January 23, 2015, [R.

25], both cross-motions have now been fully briefed.

## II

## A

An overview of the regulatory scheme in question helps frame the issues in this case.

SNAP – previously known as the Food Stamp Program – allows eligible low-income households

to use coupons "to purchase food from retail food stores which have been approved for

participation in the [program]." 7 U.S.C. § 2013(a).  Retailer participation, then, requires FNS

approval through an application and evaluation process.  7 U.S.C. § 2018.  Congress has

prescribed several factors that FNS must consider in determining whether a retailer qualifies to

participate:

> (A) the nature and extent of the food business conducted by the applicant; (B) the
> volume of benefit transactions which may reasonably be expected to be conducted
> by the applicant food store or wholesale food concern; (C) whether the applicant
> is located in an area with significantly limited access to food; and (D) *the business
> integrity and reputation of the applicant*.

*Id.* (emphasis added).  FNS has codified these four criteria in its regulations.  7 C.F.R. § 278.1(b)

(2015).  Relevant here, FNS regulations provide that the agency "shall" deny a firm authorization

if it demonstrates certain enumerated attributes reflecting on the firm's "business integrity and

reputation."  7 C.F.R. § 278.1(b)(3).  The first business integrity category is the one at issue here:

> (i) Conviction of or civil judgment against the owners, officers or managers of the
> firm for:
> > (A) Commission of fraud or a criminal offense in connection with
> obtaining, attempting to obtain, or performing a public or private agreement or
> transaction;
> > (B) Commission of embezzlement, theft, forgery, bribery, falsification or
> destruction of records, making false statements, receiving stolen property, making
> false claims, or obstruction of justice; or
> > (C) *Violation of Federal, State and/or local consumer protection laws or
> other laws relating to alcohol, tobacco, firearms, controlled substances, and/or
> gaming licenses . . . .*

7 C.F.R. § 278.1(b)(3)(i) (emphasis added).  Denial is also required for administrative removal or

a pattern of citations from a federal, state, or local program, § 278.1(b)(3)(ii); evidence of an

attempt to circumvent a period of disqualification from the Food Stamp program, §

278.1(b)(3)(iii); or prior Food Stamp Program violations by the owners or management at the

same firm or a related firm for which a sanction has not been previously imposed and satisfied, §

278.1(b)(3)(iv)-(v).  The business integrity regulations also include a catchall provision requiring

4

denial for "commission of any other offense indicating a lack of business integrity or business honesty of owners, officers or managers of the firm that seriously and directly affects the present responsibility of a person." § 278.1(b)(3)(vi).

Section 278.1(k)(3), in turn, provides the corresponding length of a denial under § 278.1(b)(3). Most of the criteria in subsection (b)(3) warrant temporary denial. *E.g.*, 7 C.F.R. § 278.1(k)(3)(ii) (providing that administrative removal from a program under § 278.1(b)(3)(ii) requires denial for a one-year period effective from the date of denial); § 278.1(k)(3)(vi) (one-year period for firms falling into the catchall provision under § 278.1(b)(3)(vi)). Subsection (k)(3)(i) mandates *permanent* denial for convictions or civil judgments under § 278.1(b)(3)(i) – including the violation of "other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses" at issue here. § 278.1(k)(3)(i).

Under the Food Stamp Act of 1977, judicial review of an administrative action denying an application to participate in the SNAP retailer program is de novo. 7 U.S.C. § 2023(13), (15) (providing that the standard of review is a "trial *de novo* by the court"). The reviewing court is tasked with "determin[ing] the validity of the questioned administrative action in issue . . . ." 7 U.S.C. § 2023(15). This review has two parts. First, a court must determine "if there were violations of the act, and if there were, to what extent violations did occur and under what circumstances." *Woodard v. United States*, 725 F.2d 1072, 1076 (6th Cir. 1984). Second, a court must determine "whether administrative action taken with respect to violations found, properly complied with the authority granted under the law and reasonable regulations." *Id.* The aggrieved store bears the burden of "establish[ing] the invalidity of the administrative action by a preponderance of the evidence," and, as to review of fact, the Court "is to make its own findings

5

based upon the preponderance of the evidence, and not limit itself to matters considered in the administrative proceeding." *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991) (citations omitted).

A review of the sanction imposed by the agency, on the other hand, is subject to an arbitrary and capricious standard. *Goldstein v. United States*, 9 F.3d 521, 523 (6th Cir. 1993) (citing *Woodard*, 725 F.2d at 1076) (describing the standard of review for sanctions as limited to "whether the sanction is 'unwarranted in law' or 'without justification in fact.'"). "If the agency properly applied the regulations, then the court's job is done and the sanction must be enforced." *Id.* at 523.

B

The Government styled its motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, a motion for summary judgment. [R. 13]. Its motion first attacks Warren's count for injunctive relief and his ostensible constitutional challenges on 12(b)(6) grounds. It also challenges Warren's action for judicial review on the merits, arguing that "Plaintiffs [cannot] meet their burden of showing, by a preponderance of evidence, that the administrative action herein was legally invalid." [Def.'s Mem. in Supp. Mot. to Dismiss, or in the Alternative, Mot. Summ. J., R. 13-1 at 6]. The Government attached the administrative record to support this latter argument, [R. 13-2, 13-3, 13-4], and Warren attached his own declaration to his cross-motion for summary judgment, [R. 26-1]. Because consideration of their arguments requires the Court to rely on that evidence, and both parties have had an opportunity to respond with their own evidence, their motions are properly construed as and converted into motions for summary judgment, even at this Rule 12 stage. Fed. R. Civ. P. 12(d); *e.g.*,

6

*Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 203 (6th Cir. 1998) (holding that, where

defendants moved to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment,

and where the plaintiff had an opportunity to submit evidence in response, it was not an abuse of

discretion to consider matters outside the pleadings and convert the motion into one for summary

judgment). Further, because the Court orders remand based on the merits of Warren's regulatory

construction argument, it need not reach the merits of the Government's 12(b)(6) challenge to

Warren's ostensible constitutional claims and claims for injunctive relief.[2]

Rule 56 provides that a party may move for summary judgment on either an entire claim

or defense or a "part of each claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is

appropriate where "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v.

Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus

summary judgment is improper, if the evidence shows 'that a reasonable jury could return a

verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp.

2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). In deciding a motion for summary judgment, the Court must review the facts and draw

all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d

---

[2] The Court notes that Warren has filed neither a motion for a preliminary injunction nor motion for a
temporary stay of the agency's decision pursuant to 7 U.S.C. § 2023(a)(17), and neither party has provided briefing
on the propriety of preliminary relief. Wright & Miller, Fed. Practice & Procedure § 2949 ("The appropriate
procedure for requesting a preliminary injunction is by motion."); *see also, e.g.*, *Shabazz v. Schofield*, No. 3:13-
00091, 2015 WL 867123,*3 (M.D. Tenn. Feb. 27, 2015) (citing *James Luterbach Construction Co., Inc., v.
Adamkus,* 781 F.2d 599, 603 n.1 (7th Cir.1986)); *see also* 7 U.S.C. § 2023(a)(17) (requiring that an administrative
action "*shall be and remain in full force and effect, unless on application to the court* on not less than ten days'
notice . . . the court temporarily stays the administrative action . . . ." (emphasis added)). With only the
Government's 12(b)(6) motion to dismiss Warren's claims for injunctive relief before the Court, and because, as
described below, the Court orders remand, it will not address the merits of those claims.

558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

The administrative record attached by the Government reflects that Warren has a criminal conviction for possession of marijuana and that his SNAP application was denied expressly because of that conviction, pursuant to § 278.1(b)(3)(i)(C).  [Ex. Administrative Record Vol 1, R. 13-2 at 19; *see also id.* at 24 (agency memo to file detailing the conviction and stating, "The firm should be permanently denied authorization to participate in SNAP in accordance with SNAP regulations Sections 278.1(b)(3)(i)(C) and 278.1(k)(3)(i).")].  Warren does not dispute this.  In fact, he admits in both his Complaint and attached Declaration that he has a misdemeanor criminal conviction for possession of marijuana.  [Am. Compl., R. 9-2 at ¶ 20; Warren Decl., R. 26-1 at ¶¶ 3-5].  In opposition to the Government's motion to dismiss, Warren asks to proceed to discovery and has filed a Rule 56(d) affidavit seeking to defer ruling on the Government's motion for summary judgment until after the Plaintiffs have been afforded an opportunity to take discovery.  [R. 17].  However, at least as to the business integrity requirement – the outcome-determinative fact for the agency – there is no dispute of material fact between the parties, and it is unclear what discovery on this prong might uncover in support of Warren's judicial review claim.

Rather, as Warren admits,[3] the chief dispute among the parties is a purely legal one: whether the agency's interpretation of its own regulation – namely, § 278.1(b)(3)(i)(C) – is entitled to deference.  "When an agency interprets its own regulation, the Court, as a general

---

[3] [Pl.'s Cross Mot. Summ. J., R. 26 at 3 ("The pertinent facts at issue in this action are relatively few in number and generally do not appear to be in dispute."); Pl.'s Reply in Supp. of Mot. Summ. J., R. 28 at 3 ("The parties dueling summary judgment motions appear to turn largely on one narrow issue: whether Warren's misdemeanor marijuana conviction . . . is a 'conviction of . . . the owner, officer or manager of the firm for . . . a violation of . . . laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses.'" (quoting 7 C.F.R. § 278.1(b)(3)(i)(C)))].

rule, defers to it unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'" *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1329 (2013) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)) (additional citation and internal quotation marks omitted); *c.f.*, *Strickland v. Comm'r, Maine Dep't of Human Servs.*, 96 F.3d 542, 545 (1st Cir. 1996) (noting that, generally, deference is due to the agency's interpretation of an ambiguous statutory provision of the Food Stamp Act, subject to a *Chevron* analysis).  A Court affords an agency "no deference, however, if the language of the regulation is unambiguous, for doing so would 'permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation.'" *Summit Petroleum Corp. v. Env'l Protection Agency*, 690 F.3d 733 at 740 (6th Cir. 2012) (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000)).  If the regulation is ambiguous and deference is due, the Sixth Circuit has noted that "'deferential' review is not inconsequential," and an agency's action must still "minimally involve[] a rational connection between the facts found and the choice made." *Id.* at 741 (quoting *Ky. Waterways Alliance v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008); *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The issue here is the scope of § 278.1(b)(3)(i)(C).  The parties have not cited, and the Court cannot find, any case conducting an *Auer* deference analysis of this provision.  Under the Government's reading of § 278.1(b)(3)(i)(C), a "violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses" encompasses controlled substances convictions like the marijuana possession conviction here.  If its reading is consistent with the regulation and is entitled to deference, as the Government insists it is, then Warren's drug conviction requires

permanent denial from SNAP pursuant to § 278.1(k)(3)(i).  Warren reads the rule differently.  He

argues that the provision's unambiguous language extends only to violation of laws relating to

alcohol licenses, tobacco licenses, firearms licenses, gaming licenses, or, here, controlled

substances licenses – not to violations of *any* law "relating to" the enumerated items.  In his

view, since the agency's interpretation is inconsistent with the unambiguous language of the

regulation, the agency is entitled to no deference, and its permanent denial based on §

278.1(b)(3)(i)(C) was arbitrary and capricious.

1

The analysis begins with plain meaning.  Highlighting the construction of the second

phrase in § 278.1(b)(3)(i)(C) – "other laws relating to alcohol, tobacco, firearms, controlled

substances, and/or gaming licenses" – Warren argues that the word "license" modifies all of the

nouns in the list that precede it.[4]  As the Supreme Court recently explained, "When several words

are followed by a clause which is applicable as much to the first and other words as to the last,

the natural construction of the language demands that the clause be read as applicable to all."

*Paroline v. United States*, 134 S. Ct. 1710, 1721 (2014) (citing *Porto Rico Ry., Light & Power

Co. v. Mor,* 253 U.S. 345, 348 (1920)).

In *Paroline*, the Court confronted a statute with similar construction:

---

[4] Warren erroneously refers to this as the "last antecedent rule" in his briefs, but *that* rule actually mandates the opposite result.  Under that rule, a "limiting clause or phrase . . . should ordinarily be read as modifying *only* the noun or phrase that it immediately follows."  *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (emphasis added); *see also* 82 C.J.S. Statutes § 443.  That rule would suggest that "license" modifies only "gaming" and no other word in the list found in subsection-(C).  However, the Supreme Court has recently explained that "that rule is 'not an absolute and can assuredly be overcome by other indicia of meaning,'" and has cautioned that the last antecedent principle should "not [be] applied [] in a mechanical way where it would require accepting 'unlikely premises.'"  *Paroline v. United States*, 134 S. Ct. 1710, 1721 (2014) (citing *Barnhart*, 540 U.S. at 26) (additional citation omitted).  The Court considers the substance of Warren's arguments, without regard to this misnomer.

10

> (3) Definition.-- For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for--
>> (A) medical services relating to physical, psychiatric, or psychological care;
>> (B) physical and occupational therapy or rehabilitation;
>> (C) necessary transportation, temporary housing, and child care expenses;
>> (D) lost income;
>> (E) attorneys' fees, as well as other costs incurred; and
>> (F) any other losses suffered by the victim *as a proximate result of the offense*.

18 U.S.C. § 2259 (emphasis added).  The natural reading of the statute, the Court determined, imposed a proximate cause requirement on all of the specific categories enumerated in (A) through (F) – not just those losses that fell into the catchall clause in (F).  *Id.* at 1721.  The Court noted, too, that applying that proximate cause requirement to all of the listed losses also "accord[ed] with common sense," since, for instance, a defendant's crime might have been the but-for cause of medical expenses covered by subsection (A), but nonetheless did not proximately cause those losses.  *Id.*  In the same way, the noun "licenses" is most logically and naturally read to apply to all of the words that precede it – not solely as a modifier for "gaming."

Two additional and related canons of construction – *ejusdem generis* and *noscitur a sociis* – shore up this common-sense reading when viewing subparagraph (C) as a whole.  Under the principle of *ejusdem generis*, "when a general [or catchall] term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration."  *Norfolk & W. Ry. Co. v. Train Dispatchers,* 499 U.S. 117, 129 (1991) (alteration supplied).  Similarly, the maxim *noscitur a sociis* ("a word is known by the company it keeps"), "while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress" or an

11

agency's regulations.  *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961) (citations omitted).

Here, subparagraph-(C) can be broken into two parts:  the specific ("Violation of Federal, State and/or local consumer protection laws") and the catchall ("or other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses.").  By grouping "consumer protection laws" together with the "other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses," the drafters defined (and cabined) the meaning of the latter phrase.  Licensure-related violations – for instance, selling cigarettes without a license, *Howard v. United States*, 2013 WL 4046370 (N.D. Ohio Aug. 7, 2013), selling alcohol to a minor, or failing to file reports in compliance with a state-run controlled substance prescription program[5] – closely resemble consumer protection law violations.  Both types of laws are in place to ensure that retailers adhere to certain safety guidelines when selling products, especially when Congress or the state or local legislative body has determined that the nature of a product (like alcohol, tobacco, firearms, controlled substances, or lottery tickets) requires restricted sale or use.  A broader reading of the latter phrase in subparagraph-(C) – one proscribing *any* offense related to alcohol, tobacco, firearms, or controlled substances – would not logically be joined with the

---

[5] For instance, in Kentucky, medical practitioners and pharmacists who are authorized to administer, dispense, or professionally use controlled substances are required to maintain "records of all controlled substances received and disposed of by them" dating back five years.  Ky. Rev. Stat. § 218A.200.  Violation of this requirement is a Class A misdemeanor for a first offense and a Class D felony for subsequent offenses.  *Id.* § 218A.200(8).  Similarly, under Kentucky's KASPER (Kentucky All-Schedule Prescription Electronic Reporting) program, dispensers or health facilities are required to report "all dispensed Schedule II, III, IV, or V controlled substances" to the state Cabinet for Health and Family Services in order to monitor an individual's prescriptions over time for law enforcement purposes and for practitioner information.  902 Ky. Admin. Reg. 55:110; *see also* Ky. Rev. Stat. § 218A.202(1), et seq.  Failure to comply with this reporting requirement results in a complaint against the applicable licensing board or agency.  Ky. Rev. Stat. § 218A.202(17).  As Warren points out, certain SNAP-authorized firms with an attached pharmacy (ranging, for instance, from large firms like Walmart or Rite Aid to small drugstores that sell food products covered by SNAP) may employ owners, officers, or managers who are subject to these kinds of provisions.

consumer protection offenses enumerated in this category.  Instead, if the drafters had intended

that broad reach, the more logical placement would have been a separate enumeration – say, a

subparagraph (D) – under the convictions listed in § 278.1(b)(3)(i).

    As Warren aptly notes, the Government's interpretation would also create an absurd

result.  The Government would require denial for violation of *any* law "relating to" alcohol,

tobacco, firearms, or controlled substances – and, in the same breath, it would require denial for

violation of *gaming licensure laws*.  Throwing a highly-specific restriction on "gaming licenses"

violations together with a broadly-drawn prohibition on any violation of "other laws relating to

alcohol, tobacco, firearm, [or] controlled substances" strains logic and conflicts with a natural,

common sense reading of the statute.

    The Government's only substantive response to Warren's construction argument[6] appears

in a footnote and is easily distinguished.  It points to language from the Animal Welfare Act that

defines an animal dealer as one who buys or sells "any dog or other animal whether dead or alive

for research, teaching, exhibition, or use as a pet."  [R. 13-1 at 9 n.3 (citing 7 U.S.C. § 2132(f))].

The Government argues that Warren's construction must be incorrect, since in this statute,

reading the phrase "as a pet" to modify "research," "teaching," and "exhibition" would "change

the meaning" of the statute.  [*Id.*]  The Government is correct that its example is one in which –

as the Supreme Court itself has cautioned – it would be nonsensical to read the last modifier ("as

a pet") to apply to all of the words in a list.  Again, the Supreme Court articulated the canon of

---

[6] Otherwise, instead of addressing the application of various canons of construction, the Government
dismissively argues that "while perhaps interesting in an academic setting, or perhaps food for thought for the
legislature [sic], an agency is not required to . . . study grammatical theses when interpreting its own regulations."
[R. 24 at 6].

13

construction as follows: "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Paroline*, 134 S. Ct. at 1721. The Animal Welfare Act statute is simply a scenario in which the final clause is *not* "applicable as much to the first and other words as to the last."[7] The phrase in § 278.1(b)(3)(i)(C) of the food stamps regulations, in contrast, is one of the scenarios in which the rule articulated in *Paroline* logically applies. The plain language and construction of § 278.1(b)(3)(i)(C), then, unambiguously limit its scope to violation of licensure-related laws.

2

The regulatory history also supports this reading. First, the business integrity regulations have become increasingly specific since Congress first directed FNS to consider a firm's "business integrity" in the Food Stamp Act of 1964. Food Stamp Act of 1964, Pub. L. 88-525, 78 Stat. 703, 705, § 8(a) (1964). Prior to 1999, the regulation provided that the FNS "may consider," among other factors,

(i)     Criminal conviction records reflecting on the honesty or integrity of officers or managers of the applicant firm;
(ii)    Official records of removal from other Federal, State, or local programs;
(iii)   Judicial determination in civil litigation adversely reflecting on the integrity of officers or managers of the applicant firm;

7 C.F.R. 278.1(b)(3) (1978); Food Stamp Program, 43 Fed. Reg. 43,272, 43,275 (Sept. 22, 1978), WL 43 FR 43272-01. Under that version, such an offense did not automatically warrant

---

[7] In fact, this is a perfect example of the true "last antecedent rule" described *supra* note 3: The "limiting phrase [(i.e., "as a pet")] . . . should [] be read as modifying *only* the noun or phrase that it immediately follows [(i.e., "use")]." *Barnhart*, 540 U.S. at 26 (emphasis added).

14

permanent denial, and the factors were highly generalized.  That changed in 1999, when FNS

amended this rule to its current form:

> (3) The business integrity and reputation of the applicant. FNS *shall deny* the authorization of any firm from participation in the program for a period of time as specified in paragraph (k) of this section based on consideration of information regarding the business integrity and reputation of the firm as follows:
>
>> (i) Conviction of or civil judgment against the owners, officers or managers of the firm for:
>> (A) Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction;
>> (B) Commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, receiving stolen property, making false claims, or obstruction of justice; or
>> (C) Violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses; . . . .

Food Stamp Program: Retailer Integrity, Fraud Reduction and Penalties, 64 Fed. Reg. 23,165,

23,171 (Apr. 30, 1999) (codified at 7 C.F.R. § 278.1(b)(3) (2015)) (emphasis added) (hereinafter

"Final Rule").  The agency explained that this mandatory language ("shall deny"), combined

with a revised subparagraph (k)(3)(i), required permanent denial for violations falling within §

278.1(b)(3)(i).  Food Stamp Program: Retailer Integrity, Fraud Reduction and Penalties, 63 Fed.

Reg. 24,985, 24,989-90 (proposed May 6, 1998) (hereinafter "Proposed Rule"); Final Rule, 64

Fed. Reg. at 23,168-69.  The agency also combined previous subsections (i) and (iii), specifically

enumerating certain offenses and violations.  This combined structure was not present in the

proposed rule, and the agency did not explicitly explain why or how it combined those factors.

The guidance issued with its Final Rule, however, indicates that FNS intended to identify the

bases for permanent denial with greater specificity, particularly given the severity of the sanction

15

at issue.  Final Rule, 64 Fed. Reg. at 23,168-69.  There, the agency noted that several

commenters "expressed concern that the standards proposed in the May 6, 1998 rule" relating to

business integrity and the permanent denial provision at 278.1(k) were "too broad, too vague and

offer too much discretion to FNS Officers in Charge to interpret."  Final Rule, 64 Fed. Reg. at

23,168-69.  In response to this concern, the agency said that it had "refined the business integrity

criteria in th[e] final rule."  *Id.* at 23,168.  By discarding the broad, imprecise language of the

prior rule (e.g., "Criminal conviction records reflecting on the honesty or integrity of officers or

managers of the applicant firm") in favor of a rule enumerating the three types of violations that

trigger permanent denial, the agency indicated that the specific enumerated offenses – and only

those offenses – fall within § 278.1(b)(3)(i)(C).

Nowhere in the guidance accompanying the proposed or final rule does FNS indicate an

intention to apply Section 278.1(b)(3)(i)(C) to drug crimes.  Rather, its guidance focuses on

"business-related" offenses:

> [T]he criteria in this final rulemaking . . . focus on the business integrity and
> reputation of the ownership and management of those firms seeking authorization
> or reauthorization in the program. *Fraudulent activity in the FSP or other
> government programs, or in business-related activities in general, reflects on the
> ability of a firm to effectuate the purposes of the FSP and abide by the rules
> governing the program.*

Final Rule, 64 Fed. Reg. at 23,168 (emphasis added).  Indeed, reading (b)(3)(i)(C) as confining

the scope of permanent denials to consumer protection and licensing violations fits with the

program's efforts at curbing the problem of food stamp fraud and trafficking.  *E.g.*, 7 U.S.C. §

2021(3)(C) (mandating permanent disqualification of an existing SNAP retailer upon "a finding

of the sale of firearms, ammunition, explosive, or controlled substance . . . [in exchange] for

16

[food stamp] coupons");  Proposed Rule, 63 Fed. Reg. at 24,985 ("The intent of this rule is to

strengthen integrity and *eliminate fraud* in the Food Stamp Program by ensuring that only

legitimate stores participate in the program, by improving the Departments ability to monitor

authorized firms, and by strengthening penalties against firms that *violate program rules*."

(emphasis added)).

Finally, the only references to "alcohol" – one of the categories of laws listed in the

second phrase of § 278.1(b)(3)(i)(C) – found in the Proposed and Final Rules' guidance

statements relate to the licensing context.  The agency provided these as examples of violations

falling within § 278.1(b)(3)(ii), a very similar provision requiring denial if a firm has been

removed from a "Federal, State, or local" administrative program:  FNS noted that denial would

be appropriate if a firm "had their State or local liquor or lottery license suspended."  Final Rule,

64 Fed. Reg. at 23,168; *see also id*. (noting that denial or suspension under the "pattern"

provision would be warranted "if a firm was fined for liquor license infractions committed by an

owner, officer or manager, and 3 such fines were imposed over a period of time").  Though these

relate to a different business integrity provision, the agency's sole references to "alcohol" or

"gaming" shed light on the intended scope of § 278.1(b)(3)(i)(C).[8]  With an express intention of

---

[8] Warren's remaining construction argument is less persuasive.  He notes that Form FNS 252-2, the retailer application form, asks: "Has the owner(s), manager(s), and/or officer(s) ever had a license denied, withdrawn, or suspended, or been fined for license violations (such as the [SNAP], business, alcohol, tobacco, lottery, or health licenses)?"  [Pl.'s Reply, R. 28 at 9; *see also* Administrative Record Vol. 1, R. 13-2 at 6].  Because the question explicitly seeks information about "license violations," and lists categories very similar to those listed in § 278.1(b)(3)(i)(C), he argues that the agency must have intended that subparagraph (C) relate only to license violations.  While this is some evidence of the agency's intent, it is not highly persuasive.  First, controlled substances – the category at issue here – are not included in the question's parenthetical list.  Second, the immediately following question on the Form asks "Was any officer, owner, partner, member, and/or manager convicted of any crim after June 1, 1999?" – a broad question that would seem to encompass drug convictions. [Administrative Record Vol. 1, R. 13-2 at 7].  The Form, by itself, therefore provides little indicia of the intended meaning of § 278.1(b)(3)(i)(C).

providing greater specificity, without any indication of an intent to apply subsection (C) with the breadth that the Government advocates for, the regulatory history of this provision is in accord with the regulation's unambiguous language limiting denials to licensing-related violations.

3

Under these long-established canons of construction, as well as indicia from the regulatory history, the Court is persuaded that the agency's interpretation of § 278.1(b)(3)(i)(C) to include general controlled substance convictions – as opposed to licensing-related controlled substances violations – is inconsistent with the plain language and construction of the regulation. *Accord, e.g.*, *Summit Petroleum*, 690 F.3d 733 (holding that the EPA's interpretation of the term "adjacent" in one of its regulations was contrary to the term's ordinary meaning and the unambiguous language of the regulation, as well as prior agency guidance in its regulatory history). The Court therefore declines to defer to the agency's interpretation of § 278.1(b)(3)(i)(C). Because Warren's marijuana possession conviction is not a "conviction . . . for [a] [v]iolation . . . of [a] law[] relating to . . . controlled substances . . . *licenses*," it does not fall within the scope of § 278.1(b)(3)(i)(C). The agency's *permanent* denial under the cross-referenced § 278.1(k)(3)(i) was therefore arbitrary and capricious.

The Government hangs its hat on the notion that, even if the regulation is ambiguous, "the decision of FNS to interpret it as it did <u>far</u> exceeded the 'minimal involv[ement]' of a 'rational connection between the facts found and the choice made.'" [Def.'s Mem. in Supp. Mot. to Dismiss, R. 13-1 at 10 (quoting *Summit Petroleum*, 690 F.3d at 740 (citations omitted))]. The Court need not reach that question, however, because it finds – like the Sixth Circuit in *Summit Petroleum* – that the regulation's plain language and construction are *unambiguous* and that the

18

agency is not entitled to deference.  As Judge Suhrheinrich explained in *Summit Petroleum*, the "rational connection" question *only* arises "if the regulation is ambiguous and deference is due." *Id.* at 741 (citing *Ky. Waterways Alliance*, 540 F.3d at 474; *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43).

But the conclusion that Warren's drug conviction does not fall within § 278.1(b)(3)(i)(C) does not end the inquiry for him.  First, it must be stressed that this conclusion is limited and that other business integrity provisions – particularly the catchall provision in § 278.1(b)(3)(vi) – might or might not preclude Warren's authorization.  The sole ground for the agency's action in this case was § 278.1(b)(3)(i)(C) (together with the permanent denial provision under § 278.1(k)).  [R. 9-2 at 5].  The Court has simply concluded that, contrary to FNS's inconsistent interpretation, the unambiguous plain language and construction of § 278.1(b)(3)(i)(C) do not encompass Warren's marijuana possession conviction.  No evidence of the agency's interpretation of, for instance, the catchall provision in § 278.1(b)(3)(vi), nor evidence of its interpretations as to the other three eligibility requirements in § 278.1(b), is before the Court, and it expresses no opinion as to whether those provisions will otherwise preclude Warren from obtaining authorization as a SNAP retailer.

Warren must also demonstrate that, as a factual matter, he complies with three other applicable eligibility requirements in order to obtain approval as a SNAP retailer.  7 C.F.R. § 278.1(b)(1), (2), (5). Neither party has briefed those factual issues, much less identified them in the administrative record.  Nor can the Court conclusively discern those issues from the administrative record: Because the agency's adjudication turned solely on Section 278.1(b)(3)(i)(C) and the related sanction provision Section 278.1(k)(3)(i), it is not clear that the

agency even made a determination on the other prongs.  Both motions for summary judgment are therefore premature, and for that reason they must be denied on the record.

In light of these considerations, the Court concludes that a remand to the agency is the most appropriate remedy here.  Even if the Court were to conduct a "trial de novo" and hear evidence on the other three remaining retailer eligibility requirements, it is not equipped to interpret § 278.1(b)(3)(vi) or the other eligibility requirements in § 278.1(b), and ascertain whether Warren's conduct falls within those provisions.  In fact, to do so would invade the province of the agency.  Congress has designated FNS as the expert in all matters related to SNAP, including the interpretation of those other provisions, and "the interests of both justice and of uniformity in the application of the regulations will best be served by allowing the agency . . . to consider the matter afresh."  *Della Valle v. United States*, 626 F. Supp. 388, 395 (D.R.I. 1986).

This kind of disposition is not unprecedented: After reaching a similar purely legal determination about the agency's interpretation of its own regulations, the *Della Valle* Court noted that "wide sweep of the language [in the judicial review statute] allows the court to shape a remedy to suit the matter at hand."  626 F. Supp. at 395 ("The Act is tailored to insure judicial flexibility; it specifically provides that, in a proceeding of this genre, the court shall "enter such judgment or order as it determines is in accordance with the law and the evidence." (quoting 7 U.S.C. § 2023)).  On the basis of its determination, it declined to assess the other components of the plaintiff-firm's eligibility and remanded the matter to the agency for reassessment.

The same approach is warranted here.  The Court will therefore vacate the final agency determination of the FNS Administrative Review Board denying Warren's application under §§

20

278.1(b)(3)(i)(C) and 278.1(k)(3)(i), and will remand for de novo reassessment of Warren's application in light of the plain meaning of subparagraph (C): that permanent denial under that section is mandatory *only* for "[v]iolation of a Federal, State, and/or local consumer protection laws or other laws relating to alcohol [licenses], tobacco [licenses], firearms [licenses], controlled substances[licenses], and/or gaming licenses."   Because the Court concludes that the plain language of the regulation is inconsistent with the agency's interpretation and requires remand – the essence of the relief Warren seeks in this judicial review action – the Court need not address the Government's challenges to his constitutional and injunctive relief claims.

### III

Accordingly, it is hereby **ORDERED** as follows:

1. The Government's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [R. 13] is **DENIED**;

2. Warren's Cross-Motion for Summary Judgment [R. 26] is **DENIED;**

3. The Food & Nutrition Service Administrative Review Board's final agency decision permanently denying Kem Warren and K & J Grab 'N Go's application to participate as a SNAP retailer pursuant to 7 C.F.R. §§ 278.1(b)(3)(i)(C) and 278.1(k)(3)(i), is **VACATED**;

4. This matter is **REMANDED** to the Food & Nutrition Service for de novo reassessment of Warren's SNAP retailer application in conformity with the plain-meaning application of § 278.1(b)(3)(i)(C), as described in this Memorandum Opinion.

This the 11th day of September, 2015.



Signed By:

*__Gregory F. Van Tatenhove__*

**United States District Judge**